CLIFFORD A. YOUNG, Respondent, v ELMIRA TRANSIT MIX, INC., Appellant.

Fourth Department, May 21, 1976

*Hiscock, Lee, Rogers, Henley & Barclay (Howard Munson* of counsel), for appellant.

*Rizzo, Aloi, Grasso, Urciuoli & Becchio* and *Irwin Birnbaum (Sheila Birnbaum* of counsel), for respondent.

CARDAMONE, J. Defendant appeals from a judgment in favor of plaintiff entered upon a $60,000 jury verdict. Plaintiff, Clifford Young, was constructing his own house in Syracuse, New York on a "do-it-yourself" basis during the year 1965. In May of that year he ordered some cement from the defendant, Elmira Transit Mix,Inc., to lay the footings and in December he ordered the same type of cement from defendant to install the cellar floor. Two loads of concrete were delivered. When plaintiff arrived to perform this work he changed into some workclothes which he had brought with him. These included red thermal underwear, rubber boot packs, knee pads and pants. After the first load of cement was deliverd, plaintiff changed his pants, and knee pads because they were wet. His underwear was damp, but he did not change that or his socks. He put the same boots back on and tied some old sweatshirts around his knees and continued to smooth out the concrete until there came a time when he could not get up, lost his balance and fell. About five minutes later he fell again and upon being helped up he saw some red fluid oozing out of his boot.

Cement is an ancient product and Portland cement, which was what defendant delivered to plaintiff in this case,is a product which is manufactured by many different companies and has been known for about 150 years. Lime is one of its ingredients and the dangers of irritations and burns from this ingredient have been known for centuries. Portland cement has a PH factor in the neighborhood of 10 to 12.5. Although the PH factor of the cement sold was within the anticipated range for Portland cement, the second batch delivered had a PH factor of 12.2 which meant that its alkalinity was 100 times greater than the first batch delivered to plaintiff which had a PH factor of 10.3. As a result of his exposure to this wet cement, Mr. Young suffered third degree burns on his lower legs. He was hospitalized for about a month and he had skin grafts taken from his upper thighs to cover the lower halves of both legs. On May 22, 1967 plaintiff returned to work. The doctor testified that plaintiff's lower legs were blotchy in appearance and had areas of loss of sensation to touch, pin-prick and temperature. His right great toe had lost 50% of its flexibility causing problems with respect to balance and his varicose veins had increased in severity and would require

surgery. At the end of a working day as a machine operator, plaintiff experienced cramps in his legs, lameness and a sore toe.

Plaintiff testified that although he worked with different types of cement in odd jobs, he had never previously been injured. He said that all that he knew about the dangers from using cement was that if an open cut was exposed to wet cement it would get sore and take a little longer to heal than usual. Although he knew that cement contained lime, he did not know that contact with it could burn the skin. Defendant's plant superintendent testified that he was aware that concrete could cause burns to the skin and that the severity of the burn depended on the length of time the concrete was in contact with the skin. It was his opinion that even dry cement was dangerous to a certain degree. He stated that it was not company procedure, nor did he ask company drivers, to give instructions or warn customers as to the proper and safe manner in which to handle cement even though defendant sold cement to "lay persons" who would have no knowledge of the dangers in using it. Defendant's drivers testified that they did not warn customers to take safety precautions · even though one of defendant's drivers knew that cement could burn or cause infection.

All the expert witnesses produced at the trial agreed, based upon their expert knowledge and experience, that wet cement was dangerous when in direct contact with the skin and could burn people's skin through wet clothing. The experts testified that persons working with wet cement should wear rubberized protective clothing impervious to water, avoid contact with the cement and keep water close at hand for washing immediately any exposed area of the skin. Defendant's expert conceded that a person would not know that cement is dangerous merely by looking at it.

On this appeal, defendant claims that it was not negligent because it had no duty to warn plaintiff of the dangers in his using the cement, that plaintiff was contributorily negligent and that the verdict was excessive. The Restatement rule controls and provides that a supplier is subject to liability where the supplier has reason to know that the product he furnishes is likely to be dangerous for the use for which it is supplied; has no reason to believe the user will realize its dangerous condition; and fails to exercise reasonable care to inform the user of the facts which make the product likely to

be dangerous (Restatement, Torts 2d, § 388). The trial court charged the jury as follows: "The manufacturer of a product which is reasonably certain to be dangerous if used in a way in which he should reasonably foresee it would be used is under a duty to exercise reasonable care, to give reasonable and adequate warning of any dangers known to him or which, in the exercise of reasonable care, he should have known and which the user of the product ordinarily would not discover. Reasonable care means that degree of care which a reasonably prudent concrete manufacturer would exercise under the same circumstances."

Defendant took no exception to this charge. It has, of course, been long settled in New York that distributors, sellers and manufacturers are under a duty to give a reasonable warning of latent dangers in the use of products which they furnish to those persons exposed to a foreseeable and unreasonable risk of harm by the seller's failure to warn those who use the product in an ordinary, expected manner *(McLaughlin v Mine Safety Appliances Co.,* 11 NY2d 62, 68; *Genesee County Patrons Fire Relief Assn. v Sonneborn Sons,* 263 NY 463, 468; *Noone v Fred Perlberg, Inc.,* 268 App Div 149, affd 294 NY 680).

Defendant's argument is not on the state of the law, but on the application of the rules of law to the facts in this case. The record clearly supports a conclusion that the defendant supplier could reasonably foresee that cement was dangerous if used as it was intended; and, that defendant had knowledge of the dangers involved in using cement without protective clothing; and, that it failed to give any warning of such dangers to the plaintiff. Moreover, the seriousness of the harm was great since third-degree burns are painful and permanent. Long contact with the concrete was inevitable in working on a cellar floor using almost two truckloads of wet cement. Whether there was a duty to warn was properly submitted to the jury (see *Bolm v Triumph Corp.,* 33 NY2d 151, 156). As this court recently stated "recovery ultimately depends upon a subjective determination by the trier of the facts of what constitutes reasonable warning under all the circumstances" *(Rainbow v Elia Bldg. Co.,* 49 AD2d 250, 253).

Similarly, the issue of plaintiff's contributory negligence was properly submitted to the jury (see *Velez v Craine & Clark Lbr. Corp.,* 33 NY2d 117) and resolved by it in plaintiff's favor. Finally, with respect to the issue of the excessiveness of the

verdict, we do not substitute our judgment on damages unless the amount awarded is so excessive as to shock one's conscience *(Rice v Ninacs,* 34 AD2d 388, 390). Such is not the present case in view of the proven injuries and damages.

The judgment should be affirmed.

MARSH, P. J., MOULE, MAHONEY and GOLDMAN, JJ., concur.

Judgment unanimously affirmed, with costs.