William and Louise **HINKLEY,** Plaintiffs,

v.

**SAFEPRO, INC., et al., Defendants.**

No. 91–CV–1292.

United States District Court, N.D. New York.

June 2, 1994.

Orseck, Orseck Law Firm (Gerald Orseck, of counsel), Liberty, NY, for plaintiffs.

Calinoff, Katz Law Firm (Arnold I. Katz, of counsel), New York City, for defendant Safepro.

## MEMORANDUM—DECISION—ORDER

McAVOY, Chief Judge.

Currently before the court is a motion by Safepro Inc. (hereinafter "Safepro") for summary judgment pursuant to Fed.R.Civ.P. 56. With due regard given to the submissions of the parties, and after concluding that oral arguments would not facilitate disposition of this matter, the court finds that summary judgment should be granted in favor of the defendant.

### 1. Discussion

The current action brought by William and Louise Hinkley stems from an accident that occurred on March 12, 1991 while the plaintiff was working for V.A.W. From the facts submitted to the court it appears that while in the course of his employment in the casting of molten aluminum, an explosion within a furnace caused molten aluminum to splatter on various portions of the plaintiff's body causing severe burns. At the time of this explosion, William Hinkley was wearing protective gear issued to him by his employer and manufactured by Safepro. This protective gear consisted of an apron, arm sleeves, and leg shields.

In their action against Safepro, the plaintiffs allege that Safepro was negligent in defectively designing these protective devices and that this negligence resulted in the injuries sustained by William Hinkley. More specifically, the plaintiffs allege that the apron, leg shields and arm sleeves were defective in that they did not provide for "snug" fittings around their openings to prevent molten aluminum from flowing underneath them. It is important to note that the plaintiffs do not contend that the injuries sustained were the result of molten aluminum actually burning through the protective devices, but instead, were caused by the molten metal flowing underneath these devices.

Safepro has moved for summary judgment on the basis that the devices worn by the plaintiff during the explosion were properly designed for their intended use and the plaintiffs have failed to establish that Safepro acted unreasonably in designing their products.

### 2. Standard

In deciding a summary judgment motion, Federal Rule of Civil Procedure 56 provides that summary judgment is appropriate only when "there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c). Once the moving party has established that no genuine question of material fact exists and that it is entitled to judgment as a matter of law, the burden shifts to the non-movant to come forward with a similar response setting forth "specific facts showing that there is a genuine issue for trial," absent which summary judgment will be granted. The opposing party "may not rest upon the mere allegations or denials of [his] pleading" (Fed.R.Civ.P. 56(e)) but rather must present "sufficient evidence favoring the non-moving party for a jury to return a verdict for that party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986). Indeed, "conclusory allegations will not suffice to create a genuine issue. There must be more than a 'scintilla of evidence,' and more than 'some metaphysical doubt as to the material facts.'" *Delaware & Hudson Railway Co. v. Consolidated Rail Corp.*, 902 F.2d 174, 178 (2d Cir.1990) (quoting *Anderson*, 477 U.S. at 252, 106 S.Ct. at 1355 and *Matsushita Electric Industrial Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586, 106 S.Ct. 1348, 1355, 89 L.Ed.2d 538 (1986)). "The non-movant cannot escape summary judgment merely by vaguely asserting the existence of some unspecified disputed material fact, or defeat the motion through mere speculation or conjecture." *Western World Insurance Co. v. Stack Oil, Inc.*, 922 F.2d 118, 121 (2d Cir. 1990).

Of course, it is well established that in deciding a motion for summary judgment, the court must resolve all ambiguities and draw all inferences in favor of the non-moving party. *See Cruden v. Bank of New York*, 957 F.2d 961, 975 (2d Cir.1992); *Ramseur v. Chase Manhattan Bank*, 865 F.2d 460, 465 (2d Cir.1989). Further, it is equally well settled that "[o]nly when reasonable minds could not differ as to the import of the evidence is summary judgment proper." *Bryant v. Maffucci*, 923 F.2d 979, 982 (2d Cir.), *cert. denied*, — U.S. —, 112 S.Ct. 152, 116 L.Ed.2d 117 (1991).

### 3. Analysis

▮▮▮ Under New York law, a plaintiff injured by an allegedly defective product may seek recovery against the manufacturer on the basis of any one or more of four theories of liability. Depending upon the factual context in which the claim arises, the injured plaintiff, and those asserting derivative claims, may state a cause of action in contract, express or implied, on the ground of negligence, or on the theory of products liability. *Victorson v. Bock Laundry Machine Co.*, 37 N.Y.2d 395, 373 N.Y.S.2d 39, 335 N.E.2d 275 (1975). In this case the plaintiffs have chosen to proceed upon the theory that Safepro was negligent in defectively designing the protective Apron, arm sleeves and leg shields that plaintiff were was at the time of the accident.

In the landmark case of *Micallef v. Miehle Co., Div. of Miehle–Goss Dexter, Inc.* 39 N.Y.2d 376, 384 N.Y.S.2d 115, 348 N.E.2d 571 (Ct.App.1976), the New York Court of Appeals set forth a new formula for determining liability based on the negligent design of a product. Prior to *Micallef*, New York had adopted a standard which held a manufacturer had no duty to guard against injury from a patent peril or from a source manifestly dangerous. *See, Campo v. Scofield*, 301 N.Y. 468, 95 N.E.2d 802 (1950). In *Micallef*, however, the Court of Appeals departed from this "patent danger" rule and in its place imposed upon the manufacturer the obligation to exercise that degree of care in the plan or design so as to avoid any unreasonable risk of harm to anyone likely to be exposed to the danger during the intended or unintended yet reasonably foreseeable use of the product. *Micallef*, supra, 384 N.Y.S.2d at 121, 348 N.E.2d at 577.

The *Micallef* decision articulated that "the degree of care" will vary with the surrounding circumstances and will involve a "balancing of the likelihood of harm, and the gravity of harm if it happens, against the burden of precaution which would be effective to avoid the harm." *Id.* 384 N.Y.S.2d at 121, 348 N.E.2d at 577. The *Micallef* court noted that the rationale behind its decision was not to compel a manufacturer to clothe itself in the garb of an insurer, but rather to place the legal responsibility on those who were in the best position to eliminate the dangers. *Id.* 384 N.Y.S.2d at 122, 348 N.E.2d at 578.

Applying the *Micallef* principles to a "defectively designed" product, New York courts have held that a "defectively designed" product is one which at the time it leaves the seller's hands, is in a condition not reasonably contemplated by the ultimate consumer and is unreasonably dangerous for its intended use. *Robinson v. Reed–Prentice Div. of Package Machinery Co.*, 49 N.Y.2d 471, 426 N.Y.S.2d 717, 403 N.E.2d 440 (Ct.App.1980); *Voss v. Black & Decker Mfg. Co.*, 59 N.Y.2d 102, 463 N.Y.S.2d 398, 450 N.E.2d 204 (Ct. App.1983). Additionally, there is no requirement that a manufacturer make the safest or best product, it is only necessary that it sells a product that is reasonably safe for its intended, as well as unintended yet foreseeable use. *See, Hart v. Hytrol Conveyer Co.*, 823 F.Supp. 87 (N.D.N.Y.1993). Thus, in order to defeat a motion for summary judgment in an action for a negligently designed product, the plaintiff must make a prima facie showing that the defendant acted unreasonably in designing the product. *Voss v. Black & Decker Mfg. Co.*, supra, 463 N.Y.S.2d at 401, 450 N.E.2d 204.

In the present case, there exists an argument as to the intended use of the products in question. Safepro argues that the protective devices worn by the plaintiff during the accident were intended to provide only heat protection and direct burn-through protection from an occasional splash of molten metal. Safepro contends the products were not represented, designed, or intended to provide protection from the quantity of molten alumi-

num that was displaced as a result of the explosion on June 19, 1991.

To support this contention, Safepro points to its catalogue which lists each product and gives a description of each product's intended use. A review of this catalogue affirms Safepro's assertion that the apron, arm sleeves and leg shields in question were not designed for, nor represented to be, air or liquid tight around their openings. Safepro concludes that because they were not intended to prevent molten metal from flowing underneath them, the protective devices in question could not as a matter of law be defective in preventing such an occurrence.

The plaintiffs, not surprisingly, dispute Safepro's argument and point to the testimony of Safepro's witness Thomas Edward Capuzzi, to support the theory that one of the intended purposes of the protective devices was to prevent molten aluminum from flowing underneath them and injuring the individual. In his deposition Mr. Capuzzi stated that the protective arm sleeves included snaps to protect anything from going down to the wrist area, and that the top of the arm sleeves may have had a feature such as an elastic strap or a velcro device to provide a "seal" around the arm. *Capuzzi Deposition Transcript,* p. 43. Taking this testimony in a light most favorable to the non-moving party, and resolving all ambiguities and drawing all inferences in favor of the non-moving party, this court is compelled to find that it is reasonable to infer that the protective devices manufactured by Safepro were intended to prevent molten metal from entering under the clothing. Thus, summary judgment is not warranted on this basis.

However, as previously articulated, the plaintiff cannot defeat a summary judgment motion merely by establishing an intended use of a product. In claiming that a product is negligently designed, the plaintiff must also make a prima facie showing that the defendant acted unreasonably in designing the product in question. Such a showing may be achieved by the submission of evidence from which this court could infer that the defendants did not undertake a reasonable degree of care when they designed their products. For example, evidence that a competitor used a safety device missing here, or that a relatively inexpensive addition to the products would have prevented the accident would be sufficient to satisfy this burden. *See generally, Micallef v. Miehle Co. etc.,* supra, 384 N.Y.S.2d at 121, 348 N.E.2d at 577.

In this case, the plaintiffs have presented no evidence that would allow this court to draw an inference that the defendants acted unreasonably in designing their protective products. The plaintiffs merely assert that the devices were defective because they allowed the molten aluminum to flow underneath them. The record is devoid of evidence as to the specific nature of the alleged defect or how such a defect would establish that the defendants acted unreasonably in designing its protective devices. Mere conclusory allegations that the products were designed defectively will not suffice to create a genuine issue of material fact sufficient to defeat a summary judgment motion. *Delaware & Hudson Railway Co. v. Consolidated Rail Corp.,* supra. Accordingly, because the plaintiffs have failed to establish a prima facie showing that the defendants acted unreasonably in designing their protective products, this court is compelled to grant Safepro's motion for summary judgment.

**IT IS SO ORDERED.**