Mohammad MOMEN and Ishrat Momen, Plaintiffs,

v.

UNITED STATES of America; USAir, Inc.; USAir Group, Inc.; U.S. Air Express Co., Inc.; Champlain Enterprises, Inc., d/b/a CommutAir; and Beech Aircraft Company, Defendants.

No. 94CV654.

United States District Court, N.D. New York.

Dec. 3, 1996.

Baum, Hedlund Law Firm, Los Angeles, CA (Paul J. Hedlund, of counsel), for plaintiff.

U.S. Department of Justice Torts Branch, Civil Division, Washington, DC (Steven J. Riegel, of counsel), for U.S.

Kroll & Tract, New York City (William C. Brown, of counsel), for defendants USAir, USAir Group and U.S. Air Express Co.

Stafford, Trombley Law Firm, Plattsburgh, NY (William L. Owens, of counsel), for defendant Champlain Enterprises.

Roemer, Wallens & Mineaux, LLP, Albany, NY (Matthew J. Kelly, of counsel), for defendant Beech Aircraft Corp.

## MEMORANDUM–DECISION & ORDER

McAVOY, Chief Judge.

## I. BACKGROUND

This case arises from the crash of CommutAir Flight 4821. Flight 4821 was a regularly scheduled commercial flight from Plattsburgh, New York to Newark, New Jersey. On January 3, 1992, the aircraft was on approach to Adirondack Airport's runway 23 in Saranac Lake, New York. At about 5:48 a.m., the Beech 1900C aircraft struck Blue Hill Mountain approximately 4.3 miles short of the runway and was destroyed. Two persons died and two persons survived the crash. Plaintiff Mohammed Momen and Captain Kevin St. Germain survived the crash.

In a related case, *Champlain Enterprises v. United States & Beech Aircraft* (94–CV–1356), 1996 WL 650700, the owner/operator of the aircraft brought suit in this Court alleging negligence on the part of Beech Aircraft and the United States. In the *Champlain* case, this Court granted co-defendant United States' Motion for Summary Judgment and dismissed all claims against the United States, see Order dated October 15, 1996, and by Memorandum–Decision and Order dated November 16, 1996, 1996 WL 685497, granted in part Beech Aircraft's Motion to Dismiss.

Currently before this Court are defendants United States, USAir, USAir Group, Champlain Enterprises, and Beech Aircraft's Motions for Summary Judgment.

### A. The Claims

Plaintiffs' First Cause of Action states a claim against the United States for negligence. Specifically, Plaintiffs assert that the FAA was negligent in its monitoring, policing, and enforcement obligations concerning management and training of CommutAir's

pilots. In addition, Plaintiffs allege that the FAA was negligent in the design, construction, and maintenance of the Instrument Landing System ("ILS") at Adirondack Airport and the ILS approach procedures.

Plaintiffs' Second Cause of Action states a claim against USAir and Champlain Enterprises for negligence. Plaintiffs argue that USAir and Champlain Enterprises, through their agents and employees, acted negligently by: following a false glideslope; lacking crew coordination; engaging in poor instrument scanning; failing to adequately train cockpit crews; failing to follow required procedures and cross-checks; operating passenger airplanes with incompetent crew; and failing to enforce company policies and procedures.

Plaintiffs' Third Cause of Action states a claim against USAir and Champlain for breach of contract. Mr. Momen alleges that USAir and Champlain breached their contract for carriage by failing to provide Momen with reasonably safe passage, failing to adequately train the crew, and failing to implement appropriate policies concerning final approaches by their pilots.

Plaintiffs' Fourth Cause of Action is for willful and wanton conduct on the part of Champlain. Specifically, Plaintiffs' allege that Champlain knew that the captain of Flight 4821 was deficient in his knowledge of ILS components and procedures, and that he was inadequately trained and prepared to captain the flight.

Plaintiffs' Fifth and Sixth Causes of Action state claims against Beech Aircraft. Plaintiff's Fifth Cause of Action asserts negligence in the design and manufacture of the Beech 1900C's Instrument Landing System ("ILS") components as well as failure to instruct and warn concerning these deficiencies. Plaintiff's Sixth Cause of Action sounds in strict liability, in that Beech is alleged to have sold a product that was unreasonably dangerous.

Finally, Plaintiffs' Seventh Cause of Action asserts a claim against all defendants on the basis of loss of consortium.

## II. DISCUSSION

### A. Summary Judgment Standard

Pursuant to Fed.R.Civ.P. 56(c), a court may grant summary judgment if it appears "that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250, 106 S.Ct. 2505, 2511, 91 L.Ed.2d 202 (1986). It is the substantive law that will determine what facts are material to the outcome of this case. *See Anderson*, 477 U.S. at 250, 106 S.Ct. at 2511.

Initially, the moving party has the burden of informing the court of the basis of its motion. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323, 106 S.Ct. 2548, 2552–53, 91 L.Ed.2d 265 (1986). If the moving party satisfies its burden, the burden then shifts to the non-moving party to come forward with "specific facts showing that there is a genuine issue for trial." Fed.R.Civ.P. 56(e). The Court must then resolve all ambiguities and draw all reasonable inferences against the moving party. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586, 106 S.Ct. 1348, 1355–56, 89 L.Ed.2d 538 (1986). However, the non-moving party must do more than simply show "that there is some metaphysical doubt as to the material facts." *Matsushita*, 475 U.S. at 586, 106 S.Ct. at 1356. Only when the Court concludes that no rational finder of fact can find in favor of the non-moving party should summary judgment be granted. *Gallo v. Prudential Residential Servs., Ltd.*, 22 F.3d 1219, 1223 (2d Cir.1994).

### B. Claims Against the United States

The complaint alleges that the United States, through the Federal Aviation Administration (FAA), was negligent in its monitoring, policing, and enforcement obligations concerning management and training of CommutAir's pilots. In addition, Plaintiffs allege that the FAA was negligent in the design, construction, and maintenance of the ILS components at Adirondack Airport and the ILS approach procedures.

Defendant United States moves for summary judgment based on two arguments:

(1) CommutAir has presented insufficient evidence to raise a genuine issue of material fact as to negligence on the part of the United States; and

(2) Negligence in the oversight of CommutAir's pilots and/or negligence in the design of the instrument approach procedure and ILS system are exempt from judicial review as "discretionary functions" of the United States pursuant to 28 U.S.C. § 2680(a).

In order to determine if the United States is entitled to summary judgment, the Court must first ascertain the contours of Plaintiffs' claim against the United States and its applicability under the Federal Tort Claims Act (FTCA). 28 U.S.C. §§ 1346 & 2671 *et seq.* This Court recently addressed this same in issue in *Champlain Enterprises v. United States & Beech Aircraft* (94–CV–1356), where the owner/operator of Flight 4821 brought suit alleging negligence on the part of Beech Aircraft and the United States. In the *Champlain* case, this Court granted co-defendant United States' Motion for Summary Judgment and dismissed all claims against the United States as barred by the discretionary function exemption. *Champlain Enterprises v. United States,* 1996 WL 650700 (N.D.N.Y.1996).[1]

The Federal Tort Claims Act is a limited waiver of the sovereign immunity of the United States. This waiver of sovereign immunity is subject to a number of exceptions, including the "discretionary function exemption" set forth in 28 U.S.C. § 2680(a). Section 2680 states in relevant part that "[t]he provisions of this chapter and section 1346(b) of this title shall not apply to—(a) Any claim ... based upon the exercise or performance or the failure to exercise or perform a discretionary function or duty on the part of a federal agency or an employee of the government." 28 U.S.C. § 2680.

■ The inquiry is "whether the challenged acts of a Government employee ... are of a nature and quality that Congress intended to shield from liability." *United States v. S.A. Empresa de Viacao Aerea Rio*

*Grandense ("Varig Airlines"),* 467 U.S. 797, 813, 104 S.Ct. 2755, 2764, 81 L.Ed.2d 660 (1984). In this regard, "Congress wished to prevent judicial 'second-guessing' of ... administrative decisions grounded in social, economic and political policy through the medium of an action in tort." *Varig,* 467 U.S. at 814, 104 S.Ct. at 2765.

Addressing Plaintiffs' allegations involving the ILS components at Adirondack Airport, Plaintiffs allege that the FAA's ILS equipment provided inaccurate signals to Flight 4821—specifically, that the "glide slope" component of the ILS provided a false signal to the CommutAir pilots that they followed down to ground impact. Plaintiffs support this argument with a scientific theory that postulates the existence of a "terrain-induced" phenomenon that alters the correct propagation of the ILS signal. The result, according to Plaintiffs, is that perturbations in the glideslope are created that allow an aircraft to hit the ground short of the runway.

■ Defendant United States argues that the furnishing of specific navigational aides by the FAA is a discretionary function. This Court agrees. *Accord Champlain Enterprises,* 1996 WL 650700, at *2. Federal statutes empower the Administrator of the FAA to "acquire, establish, improve, operate, and maintain air navigation facilities." 49 U.S.C. § 44502(a)(1)(A). Moreover, the decision to establish and maintain navigation facilities must necessarily balance the competing social and economic policies of air safety and cost effectiveness. *See* 49 U.S.C. § 44505(a)(1)(A) (stating that the FAA shall also "evaluate systems, procedures, facilities, and devices ... to meet the needs of safe and efficient navigation.").

Other courts have ruled similarly. For example, in *Varig Airlines,* the Supreme Court barred an action against the FAA for negligent safety certification of an aircraft, noting that the procedures chosen for certification were left to the discretion of the FAA and therefore were exempt from the FTCA

---

1. For a more full exposition of this issue, see generally *Champlain Enterprises,* 1996 WL 650700.

under the discretionary function exemption. *Varig Airlines,* 467 U.S. at 819–20, 104 S.Ct. at 2767–68. The *Varig* court remarked that "[t]he FAA has a statutory duty to promote safety in air transportation, not to insure it." *Id.* at 821, 104 S.Ct. at 2768.

In *West v. F.A.A.,* 830 F.2d 1044 (9th Cir.1987), *cert. denied,* 485 U.S. 1007, 108 S.Ct. 1470, 99 L.Ed.2d 699 (1988), the Ninth Circuit addressed facts similar to those presented here. *West* involved the design of an instrument departure procedure for a small airport in the mountains of California. Plaintiffs in *West* argued that the FAA was negligent in that insufficient ground lighting resulted in a visual phenomenon whereby pilots flying on a very black night could be misled into believing they were closer to the airport than they actually were. 830 F.2d at 1044. In concluding that plaintiffs' suit was within the discretionary function exemption, the Ninth Circuit noted that the "[d]etermination of safety requirements involves a balancing of social, economic or political policies. In any safety decision, there are limits to the resources available to test and inspect the procedure and those who will be using it." *West,* 830 F.2d at 1047 (*citing Varig,* 467 U.S. at 820, 104 S.Ct. at 2767–68).

Plaintiffs also argue that the FAA was negligent in the promulgation of ILS approach procedures. However, the balancing of social, economic, and political policies is no less apparent in the context of ILS approach procedures. The FAA must design instrument approaches in the context of expected pilot conduct and foreseeable environmental conditions. The exact specifications of the navigation system and approach procedures at Adirondack Airport were within the FAA's prerogative. As defendant United States notes: "To insure maximum safety, the FAA would never promulgate instrument approach procedures for aircraft to descend through clouds towards airports in mountainous terrain, but would restrict such flights to sunny, clear days." (U.S.'s Mem. of Law in Support of Motion for Summary Judgment at 9.)

■ Similarly, Plaintiffs' allegations that the FAA was negligent in its monitoring, policing, and enforcement obligations regarding management and training of CommutAir's pilots are also within the discretionary function exemption. Plaintiffs assert that the FAA was negligent in that: pilot Kevin St. Germain should not have been certified as a "check airman"; that deficient safety practices were "pervasive" at CommutAir; and that the FAA was "ignoring standards" by allowing wholly incompetent pilots such as "Kevin St. Germain" to continue to fly. (Pltfs' Mem. of Law at 8.)

Certainly, the decisions involved in overseeing air carrier compliance with Federal Aviation Regulations involve the same kinds of discretionary judgments found to be exempt in *Varig.* In *Varig,* the Supreme Court stated:

> [The FAA had] to establish priorities for the accomplishment of its policy objectives by balancing the objectives sought to be obtained against such practical considerations as staffing funding. Here, the FAA has determined that a program of "spot-checking" [aircarriers'] compliance with minimum safety standards best accommodates the goal of air transportation safety and the reality of finite agency resources.

*Varig,* 467 U.S. at 820, 104 S.Ct. at 2767–68. Here, the FAA's decision to certify check airman, and to provide air carrier inspectors necessarily "involves a balancing of social, economic or political policies." *West,* 830 F.2d at 1047 ("In any safety decision, there are limits to the resources available to test and inspect the procedure and those who will be using it.") (*citing Varig,* 467 U.S. at 820, 104 S.Ct. at 2767–68).

These are difficult decisions that are within the FAA's discretion to make; this Court will not now attempt to "second-guess" the FAA. *Accord, Colorado Flying Academy, Inc. v. U.S.,* 724 F.2d 871, 876–77 (10th Cir.1984), *cert. denied,* 476 U.S. 1182, 106 S.Ct. 2915, 91 L.Ed.2d 544 (1986) (finding FAA's decision to create a terminal control area where visual flight procedures could not be used is within discretionary function exemption).

Consequently, Plaintiffs have failed to meet their burden in showing that there is a genuine issue of material fact and thus defen-

dant United States is entitled to judgment as a matter of law.

## C. Claims Against USAir and Champlain Enterprises

Plaintiffs' Second Cause of Action states a claim against USAir and Champlain Enterprises for negligence. Through their agents and employees, Plaintiffs argue that USAir and Champlain Enterprises acted negligently by: following a false glideslope; lacking crew coordination; engaging in poor instrument scanning; failing to adequately train cockpit crews; failing to follow required procedures and cross-checks; operating passenger airplanes with incompetent crew; and failing to enforce company policies and procedures.

In addition, Plaintiffs' Third Cause of Action states a claim against USAir and Champlain for breach of contract. Mr. Momen alleges that USAir and Champlain breached their contract for carriage by failing to provide Momen with reasonably safe passage, failing to adequately train the crew, and failing to implement appropriate policies concerning final approaches by their pilots.

Champlain Enterprises operated the commuter airline CommutAir. CommutAir, in turn, did business as USAir Express Company. USAir Express had ties with USAir, the extent of which are at issue here. Although Plaintiffs do not clearly state in their Amended Complaint the theory by which they seek to hold USAir liable for the acts of Champlain Enterprises, a parsing of the Complaint and subsequent motion papers reveals at least two possibilities.

First, Plaintiffs assert that there are genuine issues of fact regarding "whether USAir asserted sufficient control over USAir Express to create a master-servant relationship imposing liability on USAir." (Pltfs' Mem. of Law at 2.) In the alternative, Plaintiffs assert that there are genuine issues of fact regarding "whether USAir [provided] Champlain Enterprises, Inc. d/b/a CommutAir operating as 'USAir Express' ... apparent authority to act as its agent in carrying revenue passengers in scheduled airline operations." (Pltfs' Mem. of Law at 2.)

### i. Master–Servant/Employer–Employee Relationship

In determining if an employer-employee relationship exists, the test in New York is whether "the purported employer controls or has the right to control both the result to be accomplished, and the manner and means by which the purported employee brings about that result." *Hilton Int'l Co. v. N.L.R.B.*, 690 F.2d 318, 320 (2d Cir.1982) (citations and internal quotations omitted). As Judge Learned Hand succinctly stated in *Radio City Music Hall Corp. v. United States*, 135 F.2d 715, 717 (2d Cir.1943), "[t]he test lies in the degree to which the principal may intervene to control the details of the agent's performance; and that in the end is all that can be said."

Although no single factor is determinative on the issue of the relationship between parties, a court may consider numerous factors, including:

> whether the purported employee is engaged in a distinct occupation ...; whether the work involved is usually done under an employer's direction or by an unsupervised specialist; the skill involved; who supplies the instrumentalities and place of performance ...; the method of payment (by the time or by the job); whether the work is part of the employer's regular business and/or necessary to it; and the intent of the parties creating the relationship.

*Hilton Int'l*, 690 F.2d at 320–21 (*citing* Restatement (Second) of Agency § 220(2)); *see also Chaiken v. VV Publishing Corp.*, 907 F.Supp. 689, 698–99 (S.D.N.Y.1995).

If an employment relationship is found to exist, New York courts look at several factors to determine whether an individual was acting within scope of that employment at the time of a particular incident. *Lundberg v. State*, 25 N.Y.2d 467, 306 N.Y.S.2d 947, 255 N.E.2d 177 (1969), sets forth the applicable standard for determining the scope of employment in New York. *Lundberg* holds that an employee acts within the scope of his employment: (1) "when he is doing something in furtherance of the duties he owes to his employer"; and (2) "where the employer is, or could be, exercising some control, di-

rectly or indirectly, over the employee's activities." *Lundberg*, 25 N.Y.2d 467, 306 N.Y.S.2d at 950, 255 N.E.2d at 179.

Here, Plaintiffs' have provided scant evidence establishing that USAir exercised control, or had the right to control, both the result to be accomplished and the manner and means by which USAir Express/CommutAir operated. See *Hilton*, 690 F.2d at 320. In opposition, Plaintiffs Local Rule 7.1(f) statement simply asserts that USAir and USAir Express coordinated their routes and timetable and shared an agreed percentage of revenue for passengers connecting between the two. This evidence, even considered in the light most favorable to Plaintiffs, clearly does not establish the requisite degree of control. In order to overcome defendant USAir's Motion for Summary Judgment on this issue, Plaintiffs must produce evidence that shows USAir exercised the degree of control necessary to find an employer-employee relationship. In this regard, Plaintiffs have failed to meet their burden in showing that there is a genuine issue of material fact; conclusory affidavits are not sufficient. *See, e.g., Matsushita*, 475 U.S. at 586, 106 S.Ct. at 1355–56.

### ii. Agency

Plaintiffs also assert that CommutAir was the agent of USAir for purposes of carrying passengers like Mr. Momen. Under New York law, a principal is liable for the acts and omissions of its agent when the agent is acting within the scope of the agent's authority. *See American Soc'y of Mech. Eng'rs. v. Hydrolevel Corp.*, 456 U.S. 556, 565, 102 S.Ct. 1935, 1942, 72 L.Ed.2d 330 (1982). An agent's authority may be express, implied, or apparent. *See Columbia Broadcasting Sys. v. Stokely–Van Camp, Inc.*, 522 F.2d 369, 374–76 (2d Cir.1975).

Here, Plaintiffs are asserting that USAir Express acted with apparent authority. In New York, apparent authority exists where "the words or conduct of the principal, communicated to the third party, have caused the third party to believe that an agent has authority to contract on the principal's behalf." *Carte Blanche (Singapore) v. Diners Club Int'l*, 758 F.Supp. 908, 920 (S.D.N.Y.1991) (*quoting Legal Aid Soc'y v.*

*Economic Opportunity Comm'n*, 132 A.D.2d 113, 521 N.Y.S.2d 833, 835 (3d Dep't 1987)). Indeed, "[i]n a wide variety of areas, the federal courts ... have imposed liability upon principals for the misdeeds of agents acting with apparent authority." *American Soc'y of Mech. Eng'rs*, 456 U.S. at 568, 102 S.Ct. at 1943 (citations omitted).

However, an agent is unable to create apparent authority solely by his own acts. *See Fennell v. TLB Kent Co.*, 865 F.2d 498, 502 (2d Cir.1989). Rather, "a principal causes his agent to have apparent authority by conduct which, reasonably interpreted, causes third persons to believe that the principal consents to have an act done on his behalf." *Johnson v. Nationwide Gen. Ins.*, 937 F.Supp. 186, 191 (N.D.N.Y.1996) (*quoting First Fidelity Bank, N.A. v. Government of Antigua & Barbuda*, 877 F.2d 189, 193 (2d Cir.1989)); *see also* Restatement (Second) of Agency § 27 (1958). Moreover, as the Second Circuit has recently noted, recovery under the theory of apparent authority does not require that the injured party inquire as to the precise extent of the agent's authority. *See Herbert Constr. Co. v. Continental Ins.*, 931 F.2d 989, 995–96 (2d Cir.1991). Rather, inquiry by the third party is only required where the circumstances of the transaction are extraordinary, making a failure to inquire unreasonable; ultimately, "[t]he duty of inquiry amounts to an alternative way of asking whether the third party reasonably relied." *Herbert Constr.*, 931 F.2d at 996.

The test, therefore, turns on whether the alleged principal's conduct, *reasonably interpreted*, would cause third persons to believe the agent acted with authority. Accordingly, the determination here will depend upon whether or not USAir created the impression, in the minds of travelers like Mr. Momen, that USAir Express was its carrier-agent.

Here, Plaintiffs marshall the following facts in their favor: USAir issued the ticket—on USAir ticket stock—to Mr. Momen for USAir Express/CommutAir Flight 4821 (Pltfs' Aff., Exh. 1A); USAir Express/CommutAir Flight 4821 displayed the insignia, logo and/or trade dress of USAir

painted on the exterior of the aircraft (Pltfs' Aff., Exh. 1B); USAir Express/CommutAir and USAir used their names together in print advertisements and other media (Pltfs' Aff., Exh. 1B); and USAir coordinated arrival and departure times of connecting flights with USAir Express/CommutAir (Pltfs' Aff., Exh. 1B).

Clearly, a reasonable juror could conclude that USAir Express/CommutAir was USAir's agent for some purpose: at a minimum, its ticketing agent or booking agent. Consequently, the question is whether the scope of USAir Express/CommutAir's agency included the actual carriage of passengers. Not surprisingly, there are few cases expressly examining the relationship, in an agency context, between national aircarriers and commuter airlines.

In support of its motion for summary judgment, USAir points to *Sponagle v. USAir Group, Inc.*, 81 Ohio App.3d 789, 612 N.E.2d 395 (1992), in which an Ohio Court of Appeals found insufficient evidence to support a finding of apparent authority given by Piedmont Airlines to Jetstream, a commuter airline. In *Sponagle*, the plaintiffs demonstrated, *inter alia*, that Jetstream was a wholly owned subsidiary of Piedmont; that Jetstream used Piedmont's logo on its planes; and that Jetstream used Piedmont's name on its employment application. *Sponagle*, 81 Ohio App.3d at 795, 612 N.E.2d 395. The Ohio Court of Appeals considered this evidence insufficient to withstand summary judgment.

However, in *Sponagle*, the court appears to have conflated two distinct legal tests: respondeat superior liability and agency by estoppel. The test the *Sponagle* Court applied was stated thusly: "For purposes of respondeat superior, an agency by estoppel may arise when one party, by his conduct, creates the impression that he exercises *the right of control* over the actions of another, which actions are directed to the attainment of the former's objective, and that impression is relied upon by a third party to his detriment." 81 Ohio App.3d at 798, 612 N.E.2d 395 (emphasis added).

Oddly, the pivotal phrase, right of control, is never defined. In the context of a summary judgment motion, the court need only find, in the light most favorable to the party opposing the motion, that a reasonable jury could find liability. In other words, the *Sponagle* court concluded that even though Jetstream was a wholly owned subsidiary of Piedmont, that Jetstream used Piedmont's logo on its planes, and that Jetstream used Piedmont's name on its employment application, no reasonable juror could conclude that Piedmont exercised a "right of control" over Jetstream. The unreasonableness of this conclusion necessarily implies that the *Sponagle* Court must have elevated the requirement of "right of control" to a level that was essentially synonymous with "actual control." This standard is more analogous to that required for employer-employee liability discussed *supra*. Since this is not the law in New York, this Court declines to hold Plaintiffs to such a high standard.

In opposition to USAir's motion for summary judgment, Plaintiffs rely on *Shaw v. Delta Airlines*, 798 F.Supp. 1453 (D.Nev. 1992). In *Shaw*, the court found that plaintiff Shaw, who was injured in an air crash involving SkyWest Airlines, had submitted sufficient evidence to survive summary judgment on the issue of apparent authority. Mr. Shaw demonstrated that: SkyWest used Delta trademarks and insignia; the two companies were often mentioned together by Delta in print advertisements; and that Delta had control over SkyWest routes and timetables. *Shaw*, 798 F.Supp. at 1454.

Applying Nevada law, the *Shaw* court articulated the test as "whether Delta represented to passengers that SkyWest possessed more authority to act as its agent than SkyWest actually did possess." 798 F.Supp. at 1458. In this regard, the District Court in *Shaw* stated that liability rests on whether "Delta created the impression in the minds of travelers ..., not whether or not Delta and/or SkyWest actually intended such a relationship to exist or intended passengers to receive such an impression." 798 F.Supp. at 1457. Unlike the *Sponagle* Court, the *Shaw* Court concluded that "the existence or non-existence of an agency relationship is a question of fact for the jury." 798 F.Supp. at 1457.

Because the test articulated by the District Court in *Shaw* is closer to the law in this circuit, *see Stanford v. Kuwait Airways Corp.*, 648 F.Supp. 1158, 1162 (S.D.N.Y.1986) ("[t]he existence of apparent authority is a question of fact"), this Court will not adopt the cramped analysis espoused in *Sponagle*. Instead, based on the facts presented by Plaintiffs here, the issue of apparent authority is appropriately a question of fact for the jury.

## D. Punitive Damages Against Champlain Enterprises

Plaintiffs' Fourth Cause of Action is for willful and wanton conduct on the part of Champlain. Specifically, Plaintiffs' allege that Champlain knew that the captain of Flight 4821 was deficient in his knowledge of ILS components and procedures, and that he was inadequately trained and prepared to captain the flight.

Defendant Champlain Enterprises seeks partial summary judgment on the basis that: (1) Plaintiffs have failed to demonstrate that there is a genuine issue of material fact as to whether the conduct of CommutAir warrants punitive damages; and (2) Plaintiffs' asserted claim for punitive damages as a separate cause of action is not available under New York law.

■ Under New York law, "punitive damages are recoverable in actions based on tortious conduct that involves malice, oppression, wanton or reckless disregard of the plaintiff's rights or other circumstances of aggravation." *O'Neill v. Yield House Inc.*, 892 F.Supp. 76, 78 (S.D.N.Y.1995) (*citing Grau v. Eljay Real Estate Corp.*, 162 A.D.2d 320, 556 N.Y.S.2d 898, 899 (1st Dep't 1990)). Further, punitive damages are not restricted to intentional injury and can be awarded where negligence is shown to be gross or wanton. *See Home Ins. Co. v. American Home Prods.*, 75 N.Y.2d 196, 551 N.Y.S.2d 481, 550 N.E.2d 930 (1990).

■ In addition, as Champlain correctly notes, in order to impose damages on a corporate defendant, the management must have "either authorized, participated in, consented to, or, after discovery, ratified the conduct" giving rise to such damages. *Roginsky v. Richardson–Merrell, Inc.*, 378 F.2d 832, 842 (2d Cir.1967); *see also Aldrich v. Thomson McKinnon Sec., Inc.*, 756 F.2d 243, 247 (2d Cir.1985).

As previously stated, entry of summary judgment is appropriate only where "there is no genuine issue of material fact and that the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c). To evaluate a fact's materiality, "it is the substantive law's identification of which facts are critical and which facts are irrelevant that governs." *Anderson*, 477 U.S. at 248, 106 S.Ct. at 2510. Under the substantive law governing punitive damages in New York, the character of Champlain's conduct is an issue material to the resolution of Plaintiffs' punitive damages claim. *See American Home Prods.*, 75 N.Y.2d 196, 551 N.Y.S.2d 481, 550 N.E.2d 930.

■ After reviewing the parties' submissions, it is clear that Plaintiffs and Champlain advance diametrically opposite claims regarding the character of Champlain's conduct in this case. Moreover, Plaintiffs offer copious evidence that both the captain of Flight 4821 *and* Champlain management acted in reckless disregard of the safety of their passengers. (See Pltfs' Rule 7(f) Statement.) In response, Champlain cites deposition testimony and has submitted affidavits in support of its position. Consequently, this Court finds that a genuine dispute exists concerning facts that are material to Plaintiffs' punitive damages claim, thus "requir[ing] a judge or jury to resolve the parties' differing versions of the truth at trial." *Anderson*, 477 U.S. at 249, 106 S.Ct. at 2510 (quotation omitted).

Accordingly, Champlain's Motion for Summary Judgment on the basis that Plaintiffs' have failed to establish a genuine issue of material fact as to their punitive damages claim is meritless.

Finally, defendant Champlain also moves for summary judgment on the assertion that Plaintiffs have failed to properly plead their punitive damages claim in the Amended Complaint. To wit, Champlain argues that a claim for punitive damages cannot be plead

as a separate cause of action under New York law.

Defendants are correct in noting that a claim for punitive damages does not state a separate cause of action under New York law. *See Sribnyj v. New York,* 1990 WL 83477, at *1 (S.D.N.Y.1990) (*citing Green v. Fischbein Olivieri Rozenholc & Badillo,* 119 A.D.2d 345, 507 N.Y.S.2d 148, 153 (1st Dep't 1986)).

However, in the federal courts, leave to amend under Federal Rule of Civil Procedure 15 shall be freely granted "when justice so requires." Fed.R.Civ.P. 15(a). Moreover, pleadings may be amended "to conform to the evidence ... at any time, even after judgment." Fed.R.Civ.P. 15(b). Ultimately, "the grant of leave to amend rests in the sound discretion of the court." *Scottish Air Int'l, Inc. v. British Caledonian Group, PLC.,* 152 F.R.D. 18, 29 (S.D.N.Y.1993).

█ Here, justice requires that Plaintiffs' assertion of willful and wanton conduct on the part of Champlain not be dismissed because of a technical deficiency in Plaintiffs' Amended Complaint. Defendant Champlain has clearly been put on notice that Plaintiffs' are seeking punitive damages for the alleged conduct of Champlain and its employees. To allow Plaintiffs to properly plead punitive damages will not prejudice Champlain.

Accordingly, Plaintiffs have 30 days to move to further amend their Amended Complaint to properly plead punitive damages.

### E. Claims Against Beech Aircraft Corp.

Plaintiff's Fifth Cause of Action alleges negligence on the part of Beech Aircraft in the design and manufacture of the Beech 1900C aircraft's Instrument Landing System ("ILS") components, as well as failure to instruct and warn concerning the alleged deficiencies. Plaintiff's Sixth Cause of Action sounds in strict liability, in that Beech is alleged to have sold a product that was unreasonably dangerous.

The crux of Plaintiffs' claims against Beech is that Beech improperly manufactured and/or designed the Beech 1900C aircraft's radome. The radome is a part of the aircraft structure that covers the aircraft's nose; it provides an aerodynamic shape and is made of a material that allows passage of radio signals. The compartment behind the radome houses the weather radar and ILS glideslope antennae.

Specifically, Plaintiffs' allege that the radome on Flight 4821 was improperly grounded, thus allowing for precipitation static interference ("P-static"), which caused errors in the aircraft's glideslope indicator. Defendant Beech Aircraft seeks summary judgment on the basis that Plaintiffs' have failed to produce any evidence or expert witnesses to support these allegations.

Under New York tort law, a plaintiff can recover for an injury sustained as a result of a "defect" under a number of theories. A plaintiff may assert that the product is defective due to a mistake in manufacturing; due to an improper design; or because of the manufacturer's failure to provide adequate warnings regarding use of the product. *See generally Voss v. Black & Decker Mfg. Co.,* 59 N.Y.2d 102, 463 N.Y.S.2d 398, 450 N.E.2d 204 (1983).

█ Under a manufacturing defect theory, the plaintiff must show that a mistake in the manufacturing process was the proximate cause of plaintiff's injury. In other words, a manufacturing defect results when a mistake in *manufacturing* renders an ordinarily safe product dangerous so that it causes harm. *See Hamilton v. Accu–Tek,* 935 F.Supp. 1307, 1322 (E.D.N.Y.1996) (*citing Victorson v. Bock Laundry Mach. Co.,* 37 N.Y.2d 395, 373 N.Y.S.2d 39, 335 N.E.2d 275 (1975)).

The New York Court of Appeals has held that a defectively designed product "is one which, at the time it leaves the [manufacturer's] hands, is in a condition not reasonably contemplated by the ultimate consumer and is unreasonably dangerous for its intended use; that is, one whose utility does not outweigh the danger inherent in its introduction into the stream of commerce." *Voss,* 463 N.Y.S.2d at 401, 450 N.E.2d at 207; *see also Robinson v. Reed–Prentice Div. of Package Mach. Co.,* 49 N.Y.2d 471, 426 N.Y.S.2d 717, 720, 403 N.E.2d 440, 442–43 (1980).

In order to establish a *prima facie* case in *strict products liability* for a design defect, a plaintiff "must show that the manufacturer ... marketed a product designed so that it was not reasonably safe and that the defective design was a substantial factor in causing plaintiff's injury." *Voss,* 463 N.Y.S.2d at 402, 450 N.E.2d at 208; *see also Parsons v. Honeywell, Inc.,* 929 F.2d 901, 905 (2d Cir.1991) (*citing Voss,* 463 N.Y.S.2d at 402, 450 N.E.2d at 208). When a plaintiff asserts a design defect claim on a theory of *negligence,* the only difference in the inquiry is that in the negligence action, the jury must ask whether the manufacturer acted unreasonably in designing the product. That is, "the focus shifts from whether the product, as designed, was not reasonably safe to whether the manufacturer was aware of that condition and chose to market the product anyway." *Gonzalez v. Morflo Industries, Inc.,* 931 F.Supp. 159, 165 (E.D.N.Y.1996) (*citing Voss,* 463 N.Y.S.2d at 401–402, 450 N.E.2d at 207–209).

Alternatively, under a failure to warn theory, "[a] manufacturer is subject to liability where it has (1) reason to know that the product it markets is likely to be dangerous for the use for which it is supplied; (2) no reason to believe the user will realize its dangerous condition; and (3) fails to exercise reasonable care to inform the user of the facts which make the product dangerous." *Gonzalez,* 931 F.Supp. at 168 (*citing Kerr v. Koemm,* 557 F.Supp. 283 (S.D.N.Y.1983) (*citing Young v. Elmira Transit Mix, Inc.,* 52 A.D.2d 202, 383 N.Y.S.2d 729, 731 (4th Dep't. 1976))). It must also be established that the alleged failure to warn is the proximate cause of plaintiffs' injury. *See Cramer v. Toledo Scale Co., Inc.,* 158 A.D.2d 966, 551 N.Y.S.2d 718 (4th Dep't.1990) (holding that an eight year-old boy was not a reasonably foreseeable user of commercial meat grinder and thus the manufacturer had no duty to provide a warning designed to alert minor child of dangers inherent in product's use).

As the previous exposition of New York tort law makes clear, in order for Plaintiffs to make out a *prima facie* case against Beech Aircraft under any of the theories outlined above, i.e. manufacturing defect, negligent design, strict products liability, or failure to warn, they must, at a minimum, demonstrate that CommutAir's Beech 1900C aircraft was *dangerous* when it left Beech Aircraft's control—the common element under all theories of liability. *See, e.g., Hamilton,* 935 F.Supp. at 1322 (a manufacturing defect results when a mistake in manufacturing renders an ordinarily safe product *dangerous* so that it causes harm) (*citing Bock Laundry,* 373 N.Y.S.2d at 39, 335 N.E.2d at 275); *Hamilton,* 935 F.Supp. at 1322 (design defect occurs when product as designed is *unreasonably dangerous* for its intended use) (*citing Micallef v. Miehle Co.,* 39 N.Y.S.2d 376, 384 N.Y.S.2d 115, 348 N.E.2d 571 (1976)); *Gonzalez,* 931 F.Supp. at 168 (under failure to warn theory, manufacturer is subject to liability where it fails to exercise reasonable care to inform the user of facts that make the product *dangerous*).

Here, defendant Beech Aircraft moves for summary judgment on the assertion that Plaintiffs have failed to show that the Beech 1900C aircraft in question was dangerous and/or that the hypothesized defect proximately caused Plaintiffs' injury. In this regard, Beech states that "even if there was P-static present it would not affect this flight in the manner that Plaintiffs' allege." (Beech Mem. of Law at 4.)

In their opposition papers and affidavits, Plaintiffs have failed to show that CommutAir's Beech 1900C was *dangerous,* let alone that the dangerous condition was the result of an act or omission by defendant Beech Aircraft. After extensive discovery and opportunity for expert depositions, Plaintiffs offer not one factual affidavit that asserts that the Beech 1900C was dangerous when it left Beech Aircraft's control. Plaintiffs' attorney's affidavit is simply not sufficient to establish a genuine issue of material fact. *See Kamen, v. Amer. Tel. & Tel. Co.,* 791 F.2d 1006, 1011 (2d Cir.1986) (attorney affidavits not based upon personal knowledge do not comply with Rule 56(e)).

In comparison, defendant Beech Aircraft offers copious evidence that there was nothing structurally wrong with the Beech 1900C prior to the accident. Defendant's supporting affidavits assert that the radome was

properly bonded to the airframe, thus minimizing P-static interference. (See Affidavit of Dr. Richard D. Gilson, Def's Ex. B, ¶ 5.) Furthermore, tests done on production configuration airplanes that were in service found none of the aircraft had ungrounded radomes. (See Deposition of Kenneth Condon, III, Def's Ex. G, at 107.) Accordingly, because Plaintiffs have not shown that the Beech 1900C was *dangerous*, they certainly have not met their burden of showing that the aircraft was *"unreasonably dangerous"* such that strict liability attaches.

In addition, even assuming *arguendo* that Plaintiffs have demonstrated that the Beech 1900C was dangerous, Plaintiffs fail to offer any factual affidavits that assert that any dangerousness was due to Beech Aircraft's defective design or improper manufacture. As this Court noted in a previous decision applying New York tort law:

> [T]he plaintiff must also make a *prima facie* showing that the *defendant acted unreasonably* in designing the product in question. Such a showing may be achieved by the submission of evidence from which this Court could infer that the defendants did not undertake a reasonable degree of care when they designed their products. For example, evidence that a competitor used a safety device missing here, or that a relatively inexpensive addition to the products would have prevented the accident would be sufficient to satisfy this burden.

*Hinkley v. Safepro, Inc.,* 853 F.Supp. 594 (N.D.N.Y.1994) (*citing Micallef,* 384 N.Y.S.2d at 121, 348 N.E.2d at 577) (emphasis added).

In this instance, Plaintiffs simply refer the Court to the National Transportation Safety Board ("NTSB") Report that states, *inter alia,* that two sections of the accident aircraft's radome were found to have screw holes that were "worn to bare fiberglass" and consequently were "electrically isolated from the anti-static paint on the surface." (*See* Pltfs' Ex. 1 at 5–6.) Notwithstanding the ongoing debate concerning the admissibility of NTSB accident reports, *compare* 49 App. U.S.C. § 1441(e) ("No part of any report or reports of the National Transportation Safe-

ty Board relating to any accident or the investigation thereof, shall be admitted as evidence...."), *Israel v. U.S.,* 247 F.2d 426, 429 n. 2 (2d Cir.1957) (finding NTSB report inadmissible in airplane accident cases), and *Keen v. Detroit Diesel Allison,* 569 F.2d 547 (10th Cir.1978) (same), *with Curry v. Chevron, U.S.A.,* 779 F.2d 272, 274 (5th Cir.1985) (allowing admission of factual portions, but not conclusive statements) and *Travelers Insurance Co. v. Riggs,* 671 F.2d 810, 816 (4th Cir.1982) (same), Plaintiffs have simply not linked the NTSB's findings with defendant Beech Aircraft. To wit, Plaintiffs have failed to offer any evidence that the "worn screw holes" were the result of a defective design by Beech Aircraft or the result of improper manufacture by Beech Aircraft.

Although the Court must resolve all ambiguities and draw all reasonable inferences against the moving party, Plaintiffs must do more than simply show "that there is some metaphysical doubt as to the material facts." *Matsushita,* 475 U.S. at 586, 106 S.Ct. at 1356. Based on the facts presented, the Court concludes that no rational finder of fact could find in favor of Plaintiffs against Beech Aircraft, and thus summary judgment should be granted. *See Gallo,* 22 F.3d at 1223. Consequently, Plaintiff's Fifth Cause of Action asserting negligence in the design and manufacture of the Beech 1900C aircraft's Instrument Landing System ("ILS") components, as well as failure to instruct and warn concerning the alleged deficiencies, and Plaintiff's Sixth Cause of Action sounding in strict liability, must be dismissed.

### III. CONCLUSION

In summary, the United States' Motion for Summary Judgment seeking to dismiss Plaintiffs' First Cause of Action as barred by the "discretionary function exemption" to the Federal Tort Claims Act is GRANTED.

Furthermore, USAir and Champlain's Motions for Summary Judgment seeking to dismiss Plaintiffs' Second and Third Causes of Action are DENIED.

Furthermore, Champlain's Motion for Summary Judgment seeking dismissal of Plaintiffs' Fourth Cause of Action, requesting

punitive damages, is GRANTED IN PART and DENIED IN PART. Plaintiffs have 30 DAYS to move to further amend their Amended Complaint to properly plead punitive damages.

Furthermore, Beech Aircraft's Motion for Summary Judgment seeking dismissal of Plaintiffs' Fifth and Sixth Causes of Action is GRANTED.

Accordingly, Plaintiffs' Seventh Cause of Action, asserting loss of consortium against all defendants, is DISMISSED as to defendants United States and Beech Aircraft.

**IT IS SO ORDERED.**