Angel **GONZALEZ**, an infant under the age of fourteen years, by his mother and natural guardian, Maria **GONZALEZ**, and Maria Gonzalez, Individually, Plaintiffs,

v.

**MORFLO INDUSTRIES, INC.,** Sabh Water Heater Group, and Robertshaw Controls, Inc., Defendants.

No. 94–CV–0111 (JG).

United States District Court, E.D. New York.

July 2, 1996.

Edmund Rothschild, Queller & Fisher, New York City, for plaintiffs.

Matthew K. Flanagan, Bivona & Cohen, New York City, for defendants Morflo Industries, Inc. and Sabh Water Heater Group.

Gerald Neal Swartz, New York City, for defendant Robertshaw Controls Company, Inc.

## MEMORANDUM AND ORDER

GLEESON, District Judge:

Angel Gonzalez and his mother, Maria Gonzalez, brought this action against Morflo Industries, Inc. ("Morflo"), Sabh Water Heater Group ("Sabh")[1] and Robertshaw Controls Company ("Robertshaw") seeking damages for injuries sustained when an infant was scalded by hot tap water in a bath tub. Plaintiffs claim that the injuries were caused by a defective water heater and temperature control device. Morflo and Sabh filed cross-claims against Robertshaw. All defendants now have moved for summary judgment on plaintiffs' claims. For the reasons stated herein, their motions are granted.

---

**1.** In 1993, Sabh purchased all of the corporate shares of Morflo, which then ceased to exist as a separate corporation.

## FACTS

In October 1992, the Gonzalez family lived in a rental unit in a house in Queens, New York. The water supplied to their apartment was heated by a Morflo water heater, which had a temperature control device on its exterior that was manufactured by Robertshaw and sold to Morflo. This water heater had been purchased by Maria Garcia, the owner of the Gonzalezes' apartment, and installed by a plumber hired by Garcia in 1992. The Morflo heater, which had been design-certified by the American Gas Association, was located in the basement of the apartment house, which was locked and inaccessible to tenants. As a result, none of the Gonzalezes had ever even seen the water heater.

There were extensive warnings on the heater itself and in the manual supplied to Garcia when she purchased the heater. The Robertshaw temperature control device on the heater included a white dial and bore the following statement in red letters: "CAUTION: Hotter water increases the risk of scald injury." The heater itself also bore a warning label affixed to its exterior reading "DANGER" and bearing a picture of hot water coming from a faucet and burning a hand beneath it. Additionally, it stated:

> Water temperature over 120 degrees Fahrenheit can cause severe burns instantly or death from scalds. Children, disabled, and elderly are at highest risk of being scalded. See instruction manual before setting temperature at water heater. Feel water before bathing or showering. Temperature limiting valves are available, see manual.

In the manual that accompanied the Morflo heater, the following warning and information appeared:

> DANGER! The thermostat is adjusted to its lowest temperature position when shipped from the factory. Adjusting the thermostat past the 120 degree Fahrenheit bar on the temperature dial will increase

the risk of scald injury. The normal position is approximately 120 degrees Fahrenheit.

DANGER: WARNING. Hot water can produce first degree burns in 3 seconds at 140 degrees Fahrenheit (60 degrees Celsius), in 20 seconds at 130 degrees Fahrenheit (54 degrees Celsius), in 8 minutes at 120 degrees Fahrenheit (49 degrees Celsius).

At the time the water heater was installed, the temperature control device was set on "medium," which Garcia stated was 140 degrees Fahrenheit, and apparently remained on the medium setting until Angel Gonzalez was burned.

This occurred on October 1, 1992, when fifteen month-old Angel was being given a bath by his fifteen year-old brother, Daniel. Upon hearing the telephone ring, Daniel left Angel alone in the tub and went to answer the telephone. No one else was in the apartment with the two boys. The water was running when Daniel left the bathroom. Although the record does not reveal exactly what happened next, it is undisputed that Angel was scalded by hot water that came out of the tap when Daniel went to the telephone.

Angel and his mother, Maria Gonzalez, brought this suit against Morflo, Sabh and Robertshaw, alleging that Angel Gonzalez was burned as a result of design and manufacturing defects in Morflo's water heater and Robertshaw's temperature control device and inadequate warnings and instructions accompanying them. Plaintiffs claim that there were (1) manufacturing defects for which defendants are strictly liable and which constitute negligence and a breach of implied and express warranties; (2) design defects for which defendants are strictly liable and which constitute negligence and breach of implied and express warranties; and (3) inadequate warnings for which defendants are strictly liable and which constitute negligence.

## DISCUSSION

### A. Standard For Summary Judgment

■ Summary judgment should be granted where "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c). The burden is upon the moving party to demonstrate that no genuine issue of material fact exists. All ambiguities must be resolved and all inferences drawn in favor of the party against whom summary judgment is sought. *Gallo v. Prudential Residential Services, Limited Partnership*, 22 F.3d 1219, 1223 (2d Cir.1994).

■ Where the moving party demonstrates that if the case went to trial there would be no competent evidence to support a judgment for its opponent, the moving party has met its burden. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986); *Celotex Corp v. Catrett*, 477 U.S. 317, 325, 106 S.Ct. 2548, 2553, 91 L.Ed.2d 265 (1986); *Apex v. Di-Mauro*, 822 F.2d 246, 252 (2d Cir.1987), *cert. denied*, 484 U.S. 977, 108 S.Ct. 489, 98 L.Ed.2d 487 (1987); Wright, Miller & Kane, 10A *Federal Practice and Procedure* § 2727 (1983).

■ To survive the summary judgment motion, the non-moving party must make a showing sufficient to establish the existence of the elements essential to that party's case. *Mount Vernon Fire Ins. v. Creative Housing*, 797 F.Supp. 176, 179 (E.D.N.Y.1992). When no rational juror could find in favor of the nonmoving party because the evidence to support its case is so slight or non-existent on a material element, there is no genuine issue of material fact and a grant of summary judgment is proper. *Gallo*, 22 F.3d at 1224.

### B. The Design Defect Claims [2]

Defendants argue that they are entitled to summary judgment because there is no genu-

---

**2.** The record reveals that there is no basis for the manufacturing defect claims pleaded in the complaint, and plaintiffs stated at a pre-motion conference that they were abandoning them. Therefore, the motion for summary judgment is granted with respect to these claims.

ine issue of material fact as to whether the water heater and the temperature control device were defectively designed. Specifically, they argue that the water heater and the temperature control device were not unreasonably dangerous under theories of negligence or strict liability, and did not breach an implied warranty because they were fit for their ordinary purpose. Plaintiffs argue that the water heater and temperature control device were designed to allow the heater to raise the temperature of water to a dangerously high level, the utility of which did not justify its risk of injury. Plaintiffs further claim that the temperature control device was defectively designed because it was not labeled clearly enough to indicate the temperature of the water. Finally, plaintiffs argue that the question whether the water heater and the temperature control were unreasonably dangerous must be submitted to a jury.

### 1. Tort Versus Contract Action For Design Defect

■ Recently, the New York Court of Appeals addressed the differences between the tort and contract causes of action that arise out of a defectively designed product. *Denny v. Ford Motor Co.,* 87 N.Y.2d 248, 639 N.Y.S.2d 250, 662 N.E.2d 730 (1995). The tort cause of action is brought as a strict liability or negligence claim, while the contract action is brought as a breach of warranty claim. The court held that while the tort and the contract claims are often invoked together, the core element of "defect" is "subtly different in the two causes of action." *Id.* at 256, 639 N.Y.S.2d at 254, 662 N.E.2d at 734.

■ Under the strict liability theory for a defectively designed product, a plaintiff makes out a *prima facie* case by showing that the manufacturer marketed a product designed so that it was not reasonably safe and that the defective design was a substantial factor in causing the plaintiff's injury. *Voss v. Black & Decker Manufacturing Company,* 59 N.Y.2d 102, 463 N.Y.S.2d 398, 450 N.E.2d 204 (1983). A product is not reasonably safe if a reasonable person, who knew of the defect at the time the product was manufactured, would have concluded that the utility of the product did not outweigh the risk inherent in marketing a product designed in that manner. *Voss,* 59 N.Y.2d at 107, 463 N.Y.S.2d at 402, 450 N.E.2d at 208.[3]

■ The factors to be considered in determining whether a product is reasonably safe include: (1) the likelihood that the product will cause injury; (2) the product's utility to the public as a whole and to the individual user; (3) the technological and economic feasibility of a safer design; (4) the plaintiff's awareness of the danger and ability to have avoided injury by careful use of the product; and (5) the manufacturer's ability to spread the cost of any safety-related design changes. *Fallon v. Clifford B. Hannay & Son, Inc.,* 153 A.D.2d 95, 550 N.Y.S.2d 135 (3d Dep't. 1989); *see also Denny* 87 N.Y.2d at 257, 639 N.Y.S.2d at 255, 662 N.E.2d at 735 (citing *Voss v. Black & Decker Manufacturing Co.,* 59 N.Y.2d at 109, 463 N.Y.S.2d at 402, 450 N.E.2d at 208). This analysis "is rooted in the recognition that there are both risks and benefits associated with many products and that there are instances in which a product's inherent dangers cannot be eliminated without simultaneously compromising or completely nullifying its benefits." *Denny,* 87 N.Y.2d at 257, 639 N.Y.S.2d at 255, 662 N.E.2d at 735.

**3.** In *Denny,* The New York Court of Appeals acknowledged that this "risk/utility" inquiry is like a traditional negligence action where "the reasonableness of an actor's conduct is considered in light of a number of situational and policy-driven factors." 87 N.Y.2d at 258, 639 N.Y.S.2d at 256, 662 N.E.2d at 734. Indeed, the court cited several cases and law review articles that state that negligence and strict liability design defect claims are virtually indistinguishable. *See, e.g.,* S. Birnbaum, *Unmasking the Test of Design Defect: from Negligence [to Warranty] to Strict Liability to Negligence,* 33 Vanderbilt L.Rev. 593; *Enright v. Eli Lilly & Co.,* 77 N.Y.2d 377, 568 N.Y.S.2d 550, 570 N.E.2d 198 (1991), *cert. denied,* 502 U.S. 868, 112 S.Ct. 197, 116 L.Ed.2d 157 (1991); *but see Voss v. Black & Decker Manufacturing Co.,* 59 N.Y.2d 102, 463 N.Y.S.2d 398, 450 N.E.2d 204 (1983) (stating that strict products liability for design defect differs from cause of action for negligently designing product in that plaintiff is not required to prove that the manufacturer acted unreasonably in designing the product, but only that the product, as designed, was not reasonably safe).

When a plaintiff asserts a design defect claim on a theory of negligence, the only difference in the inquiry is that in the negligence action, the jury must ask whether the manufacturer *acted* unreasonably in designing the product. That is, the focus shifts from whether the product, as designed, was not reasonably safe to whether the manufacturer was aware of that condition and chose to market the product anyway. *Voss*, 59 N.Y.2d at 107, 463 N.Y.S.2d at 401–402, 450 N.E.2d at 207–209.[4]

In a breach of implied warranty action for a defectively designed product, unlike in the tort action, the inquiry is not whether there were safer designs available, but whether the product was "fit for the ordinary purposes for which such goods are used." *Denny*, 87 N.Y.2d at 258, 639 N.Y.S.2d at 256, 662 N.E.2d at 734 (citing U.C.C. § 2–314(2)(c)). This inquiry focuses on the expectations of the product's performance when used in the customary, usual, and reasonably foreseeable manner. *Id.* Plaintiff's recovery in a breach of warranty action depends on a showing that the product was not minimally safe for its expected purpose, regardless of the feasibility of making the product safer.

It is undisputed in this case that at the time of Angel Gonzalez's accident, the water temperature control on the water heater in his apartment building was set between 130 degrees and 140 degrees Fahrenheit, and that water heated to such temperatures can cause severe burns in under thirty seconds. Thus, there is clearly some danger associated with a residential water heater that is designed to heat water used for bathing to 130 to 140 degrees. The critical questions raised by defendants' motions are whether a rational jury could find: (1) with respect to the tort claims, that this risk outweighed the utility of such a water heater; and (2) with respect to the contract claim, that the water heater was not reasonably fit for its intended use.

a. *Design Defect Claims Based In Tort*

As plaintiffs correctly argue, in a negligence or strict liability action, it is generally the jury's job to weigh the product's risks against its utility and cost in accordance with the factors laid out in *Fallon* and *Denny*, and to determine whether the product was unreasonably dangerous. *Voss*, 59 N.Y.2d at 109, 463 N.Y.S.2d at 402, 450 N.E.2d at 208. However, it is the plaintiff's burden to make out a *prima facie* case. *Fallon*, 153 A.D.2d at 99, 550 N.Y.S.2d at 137. As noted above, when no rational jury could find in favor of the non-moving party because the evidence to support its case is so slight, there is no genuine issue of material fact and a grant of summary judgment is proper. *Gallo*, 22 F.3d at 1224.

Here, no rational jury could conclude that plaintiffs have made out a *prima facie* that the Morflo water heater was unreasonably dangerous. First, while plaintiffs have shown that the severity of the injury that can be caused by hot water is great, they have provided no evidence to suggest how often such an accident occurs, *i.e.*, the likelihood of this problem occurring. Common sense suggests that people avoid injury from extremely hot tap water by turning it off or otherwise ceasing contact with it before burns occur. Injury is apt to result only in the rare case in which a person is both (a) physically unable to either feel pain or to get out of the water's way; and (b) is left unattended and exposed to the hot water. Plaintiffs have failed to demonstrate even a meaningful, let alone "substantial," likelihood of this type of harm. *See Voss*, 59 N.Y.2d at 108, 463 N.Y.S.2d at 402, 450 N.E.2d at 208.

Second, while there is a dispute between the parties' experts over the necessity or desirability of water over 120 degrees for residential appliances such as dishwashers and clothes washers, this is not a genuine dispute. Norman Wesler, plaintiff's expert, does not refute the assertion of defendants'

**4.** This supposed difference in standards has been the subject of much debate and many courts and commentators believe that there is no practical distinction at all. Nonetheless, if there is a difference it seems to be that under a strict liability theory, plaintiff does not have to show that the manufacturer was aware of the condition that was unreasonably dangerous, while under the negligence theory, the plaintiff must show actual knowledge of the condition and a choice to market it anyway.

expert that some appliance manufacturers recommend using water heated to over 120 degrees. Indeed, Wesler admits that some clothes washer manufacturers recommend using 140–degree water.[5] Moreover, plaintiffs do not dispute defendants' expert's assertion that water in excess of 120 degrees must be available for mixing with cold water in order to have a desirable flow from the tap.[6]

In this respect, this case is strikingly similar to *Williams v. Briggs Co.,* 62 F.3d 703 (5th Cir.1995). On substantially identical facts, that case held that the district court properly granted a Fed.R.Civ.P. 50(a)(1) motion where plaintiff's expert conceded that many manufacturers of residential dishwashers and washing machines recommended using water heated to as high as 165 degrees. He also conceded that by permitting the water heater to produce water that was hotter than needed, that water could be combined with cold water to produce greater flow at a comfortable bathing temperature. *Id.* at 706.

Third, plaintiffs offer only unsupported, conclusory evidence on the technological and economic feasibility of a safer design. Mr. Wesler suggests that a safer design would include a clearer temperature control dial which indicated the degree to which the water would be heated, rather than simply indicating "low—medium—high," and a temperature restriction valve, or an "anti-scald" device, which would have stopped the flow of water when it reached a certain temperature. However, these are merely hypothetical designs that plaintiffs' expert has never tested. Mr. Wesler offers no foundation or reasoning for his conclusion that the temperature dial on the heater was confusing, and there is no reason to believe that this opinion is held by anyone other than him. In fact, a more reasonable inference would be

that the "low—medium—high" indication would be clearer than specific temperatures since most people are unaware of whether water at a specific temperature would be comfortable or not.

Mr. Wesler also has no knowledge of the economic feasibility of the safety device he proposes. He states that the part costs $5.00, but he does not give an opinion as to the cost and feasibility of installing this part. He also does not state whether this device would reduce the utility of the water heater, or require a separate water heater or separate plumbing when the hot water is used for purposes other than bathing. Moreover, he has not named a single manufacturer which has ever used this design or produced a water heater that did not heat water to greater than 120 degrees. Defendants have submitted an affidavit from the former Vice President of Engineering at Morflo, which states he is unaware of any water heater designed with an anti-scald device or temperature restrictive valve. This is uncontroverted by plaintiffs.

Finally, plaintiffs provide no evidence that the general public is unaware of the dangers of hot water or that they are unable to avoid them. As noted above, people who use bathroom taps for showering or bathing can generally detect whether the water is too hot by touching it for a second, without causing injury, or by seeing steam. When babies are given baths, the danger of burning the baby is readily avoidable by feeling the water before placing the baby in the tub. Hot water, like innumerable other household commodities, poses a risk to unattended babies. No one can reasonably dispute that the injuries to Angel Gonzalez were both tragic and heart-wrenching. However, it is equally indisputable that they could readily have been

---

5. Wesler simply states that his wife does all her laundry in cold water, implying that this is satisfactory for him, and that dishwashers have internal electric coils to heat the incoming water. This of course does not negate the utility of hot water for those who wish to wash their clothes in it. As for dishwashers, Wesler does not refute the assertion that, despite the existence of heating coils in the appliances, dishwashers nonetheless require water in excess of 120 degrees.

6. Plaintiffs argue in their brief that Wesler recommended using a temperature restriction valve with a mixing valve to allow proper flow at a higher temperature. However, the deposition testimony they cite does not support this claim. (Plaintiff's Brief at 7, citing Wesler Dep. of June 7, 1995, at 57–59.)

anticipated and eliminated entirely with ordinary care.

I conclude that no rational jury could find that the risk of harm from the design of the products at issue here outweighed the utility of having a heater that raised the water temperature to' over 120 degrees. Accordingly, defendants' motion for summary judgment is granted with regard to the strict liability and negligence claims to the extent that they rely on defects in the actual design of the water heater and temperature control device.

### b. *Design Defect Claims Based In Contract*

Plaintiffs' next theory is that the design defect of the Morflo water heater breached an implied warranty of merchantability.[7] Defendants argue that because there was no design defect in the Morflo water heater or the Robertshaw temperature control device, there was no breach of warranty.

▮▮ In some cases, a rational factfinder could conclude that a design defect that is not actionable in tort may nevertheless support a viable contract claim. That is, the factfinder could simultaneously conclude that a product's utility outweighs the risk of injury and that the product was not safe for the "ordinary purpose" for which it was marketed and sold. *See Denny*, 87 N.Y.2d at 263, 639 N.Y.S.2d at 258, 662 N.E.2d at 735 (holding that jury could rationally find that Ford Bronco's utility as an off-road vehicle outweighed the risk of injury resulting from rollover accidents, while also finding that the vehicle was not safe for the "ordinary purpose" of daily driving for which it was marketed and sold.) Such a case presents itself infrequently; it requires a showing that the "ordinary purpose" for which the product was sold and marketed is not the same as the purpose that provides the utility that outweighs the risk of injury. *Id.*

▮▮ These circumstances are not present in this case. The ordinary purpose of the Morflo water heater was to heat water for residential use—for bathing *and* for residential appliances. Using the Morflo heater to heat more than just bath water was the "ordinary purpose" of the heater. As discussed earlier, plaintiffs do not adequately set forth evidence to rebut defendants' claim that there was utility associated with the heater's ability to raise the temperature of water to a level which could scald the human body. Moreover, this heater performed in the exact manner in which it was expected to perform when it was used in the customary, usual, and reasonably foreseeable manner. For this reason, there is no genuine issue of material fact as to whether the Morflo water heater was fit for the ordinary purpose for which it was used, and therefore defendants motion for summary judgment is granted with regard to plaintiffs' design defect claims resting on the breach of warranty theory.

### C. *Failure To Warn*

Plaintiffs' final argument is that Morflo's warnings were inadequate because: (1) there were no numbers on the temperature control dial, whereas the warnings referred to specific temperatures which could be dangerous; and (2) the warnings failed to alert the user that the temperature of the water that came out of the tap could be as much as 30 degrees higher than the temperature indicated on the temperature gauge, a condition known as "stacking."[8] Defendant's argue for summary judgment on this claim because the risk of injury was open and obvious, the user was already aware of the dangers associated with hot water, and the lack of warnings was not the proximate cause of plaintiffs' injury.

▮▮ A manufacturer is subject to liability where it has (1) reason to know that the product it markets is likely to be danger-

---

7. In their complaint, plaintiffs also claim that they relied on express warranties that were breached by defendants. However, plaintiffs offer no proof of any warranties that were expressly made by Morflo or Robertshaw. Therefore, there is an absence of a genuine issue of material fact as to whether Morflo and Robertshaw breached express warranties for their products.

8. Plaintiff puts forth no evidence that this was the cause of Angel Gonzalez's injury. I therefore do not address whether the alleged failure to warn of the possibility of "stacking" could have caused the accident at issue.

ous for the use for which it is supplied; (2) no reason to believe the user will realize its dangerous condition; and (3) fails to exercise reasonable care to inform the user of the facts which make the product dangerous. *Kerr v. Koemm,* 557 F.Supp. 283 (S.D.N.Y. 1983) (citing *Young v. Elmira Transit Mix, Inc.,* 52 A.D.2d 202, 383 N.Y.S.2d 729, 731 (4th Dep't.1976)). This means that if the danger was sufficiently obvious—so apparent and so clearly within common knowledge— that it would be unreasonable to impose on the manufacturer a duty to warn, there is no liability for failure to warn the user. *Lancaster Silo & Block Co. v. Northern Propane Gas Co.,* 75 A.D.2d 55, 427 N.Y.S.2d 1009 (4th Dep't.1980) (holding that there is no necessity to warn a consumer already aware through common knowledge or learning of a specific hazard). While, in general, the reasonableness of a manufacturer's warnings is a jury question, in an appropriate case the court can decide as a matter of law that there is no duty to warn. *Id.* at 65, 427 N.Y.S.2d 1009.

 It must also be established that the alleged failure to warn is the proximate cause of plaintiff's injury. *Cramer v. Toledo Scale Co., Inc.,* 158 A.D.2d 966, 551 N.Y.S.2d 718 (4th Dep't.1990) (holding that an eight year-old boy was not a reasonably foreseeable user of commercial meat grinder and, thus, manufacturer had no duty to provide a warning designed to alert minor child of dangers inherent in product's use). Therefore, where a warning would not have increased the particular injured user's awareness of the danger, failing to warn cannot be said to have been the proximate cause of the accident. *Kerr,* 557 F.Supp. at 286.

 In this case, Morflo provided extensive warnings regarding the dangers of heating water to greater than 120 degrees. On the heater itself was a label reading

### DANGER!

Water temperature over 125 degrees Fahrenheit can cause severe burns instantly or death from scalds.
Children, disabled, and elderly are at highest risk of being scalded.

See instructions manual before setting temperature at water heater.

Feel water before bathing or showering.

Temperature limiting valves are available, see manual.

On the thermostat knob were further warnings: "Caution. Hotter water increases the risk of scald injury." The operation, installation, and service manual had even more extensive warnings indicating how quickly water of certain temperatures could cause burning. Moreover, it stated that "households with small children or invalids may require a lower temperature setting."

Plaintiffs do not claim that these warnings were inadequate. They claim only that the warnings were deficient because they referred to specific temperatures rather than advise the user of the proper setting on the temperature control knob. However, Maria Garcia, who set the water heater temperature, actually knew the temperature to which the knob was set. She stated repeatedly in her deposition that when the water heater was installed, she knew the temperature at which the water heater was set—140 degrees—and the warnings on the heater and in the operations manual clearly stated that water in excess of 120 degrees was potentially dangerous. Providing any further warning to Garcia would not have increased her awareness of the danger and would not have prevented the accident. Therefore, the failure to warn Garcia of the temperature of the water could not have been the proximate cause of Gonzalez's accident.

 The only question remaining is whether Morflo had any duty to warn the actual users—the Gonzalezes—of the risks of hot water coming out of the tap. However, this danger is so open and obvious that Morflo and Robertshaw had no duty to warn plaintiffs of it. Moreover, the failure to warn cannot be said to have caused the injury. Daniel Gonzalez, a fifteen year-old, was fully aware of the dangers of hot water. While plaintiffs suggest that Daniel was unaware of the temperature at which burning could occur, warnings would not have avoided the accident because he was unaware of the temperature of the water. It was enough

that Daniel was aware that hot water can burn the skin—the nature of the injury in this case. *See National Bank of Bloomington v. Westinghouse Electric Corp.,* 235 Ill. App.3d 697, 175 Ill.Dec. 817, 600 N.E.2d 1275 (4th Dist.1992) (water heater manufacturer had no duty to warn that hot water can cause injury because danger was open and obvious.)

Because Morflo and Robertshaw had no duty to warn of the dangers of hot water, and their failure to warn was not the proximate cause of the injury in this case, defendants' motion for summary judgment is granted on the failure to warn claims as well.

## CONCLUSION

For the foregoing reasons, the defendants' motions for summary judgment are granted.

So Ordered.